521 A.2d 84

Richard Rieger, Petitioner *v.* Workmen's Compensation Appeal Board (Barnes & Tucker Company), Respondents.

Argued November 18, 1986, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*David J. Tulowitzki,* with him, *Timothy P. Creany, Pawlowski, Long, Creany & Tulowitzki,* for petitioner.

*John J. Bagnato,* with him, *Robert G. Rose, Spence, Custer, Saylor, Wolfe & Rose,* for respondent, Barnes & Tucker Company.

OPINION BY JUDGE COLINS, February 17, 1987:

On December 18, 1981, Richard Rieger (claimant) suffered a compensable spinal injury during the course of his employment which resulted in a paraparesis of his legs.[1] Barnes and Tucker Company (employer) does not dispute that claimant's injury is one of total disablement, and that because of this injury he must use a wheelchair frequently and for long periods of time. The claimant is only able to walk up to two hundred feet using leg braces and crutches.

Because of the nature of the claimant's injury, an occupational therapist who visited the claimant's home recommended that certain adjustments be made in order to facilitate the claimant's ambulation in and around his home. These recommendations included the placement of bars and ramps in the bathroom and kitchen areas to facilitate the claimant's ability to enter and exit his wheelchair as necessary without the aid of another person, the widening of doorways to facilitate passage of the wheelchair, the placement of ramps in the rear entrance to claimant's home for the wheelchair to be able to enter the home, and an enlargement of the claimant's garage to allow placement of a ramp which would provide the claimant access to and from his car.

---

[1] Specifically claimant's injury has been diagnosed as a 12-L1 fracture and dislocation of the spine with a partial tonus-canuda equinal injury. The claimant underwent surgery where he had a decompression laminectomy and fusion performed and Harrington rods inserted to add stability to the spine.

In addition the claimant had hand controls installed in his automobile in order to enable him to drive. The claimant incurred bills in the amount of $433.02 for the remodeling of his home, and a bill of $359.34 for the installation of hand controls in his automobile.

The employer refused to pay these bills, and the claimant consequently filed a claim petition to recover his costs of remodeling and automobile hand controls. A workmen's compensation referee, after hearing evidence, issued an order on June 22, 1984, wherein he concluded that Section 306 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §531, does not cover such costs. The Workmen's Compensation Appeal Board (Board) affirmed his decision on appeal. This appeal followed.

The sole issue before this Court, one of first impression, is whether the Act covers the aforementioned costs. *This issue is one of law, and our scope of review* includes all questions of law. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Bowlaway Lanes v. Workmen's Compensation Appeal Board (Catarosa)*, 90 Pa. Commonwealth Ct. 534, 496 A.2d 99 (1985).

Section 306 of the Act, 77 P.S. §531, specifically provides:

The following schedule of compensation is hereby established:

(1) The employer shall provide payment for reasonable surgical and medical services, services rendered by duly licensed practitioners of the healing arts, medicines, and supplies, as and when needed: . . .

. . . .

(4) In addition to the above services, the employer shall provide payment for medicines and

supplies, hospital treatment, services and supplies and orthopedic appliances, and prosthesis.

As it is obvious that the claimant's home remodeling and automobile renovation do not fit under the definition of prosthesis, medicines, hospital treatment, or services, we must determine specifically whether they fit under either the definition of supplies or orthopedic appliances.[2]

Webster's Third New International Dictionary 1594 (1966) defines "orthopedic" as "involving or affected by deformities or crippling." Furthermore, "appliance" is defined as "a tool, instrument or device specifically designed for a particular use." *Id.* at 105.

In construing the Act, we must keep in mind that being remedial in nature and intended to benefit the Pennsylvania worker, it must be liberally construed to effectuate its humanitarian objectives.[3] *Krawchuk v. Philadelphia Electric Co.*, 497 Pa. 115, 439 A.2d 627 (1981).

No prior reported case has ever construed the terms "orthopedic appliances" or "supplies" before. It is certainly clear, however, that a wheelchair is, by common usage, an orthopedic appliance. It is undisputed that the claimant must use a wheelchair for much of his ambulation. It is likewise clear that all of the remodeling done upon the claimant's home was to permit him to utilize his wheelchair. There can be no doubt that bars placed

---

[2] Claimant argues that his costs are covered by the Act as "supplies." While we are of the opinion that such costs are covered as "orthopedic appliances," we do not herein intimate any opinion as to whether they are also "supplies."

[3] We must also further note that rehabilitative medicine is an established specialty within medical science and that many major hospitals have departments of rehabilitative medicine. *See,* CURRENT THERAPY IN PHYSIATRY, PHYSICAL MEDICINE AND REHABILITATION (A. Ruskin, M.D., F.A.C.P. ed. 1984).

within a bathroom and ramps leading to and from a home are certainly devices specifically designed for the particular use of wheelchair users. It is likewise certain that devices to aid in the use of wheelchairs fit within the above definition of "orthopedic." We must, therefore, conclude that the remodeling done upon claimant's home in the instant case is within the definition of "orthopedic appliance."

Likewise, we determine that hand controls in an automobile are, in the instant setting, a device specifically designed for the particular use of allowing the handicapped to travel as necessary without aid and, as such, qualify as an "orthopedic appliance." The Board has clearly committed an error of law in excluding the claimant's costs for remodeling and installation of hand controls.

The employer contends before this Court that there is no medical basis to conclude that the requested alterations in the claimant's home were required as a result of his work injury. Apparently the employer asserts that because the claimant could ambulate upon crutches, the alterations to his home were in fact unnecessary. The referee specifically found that the claimant was confined to a wheelchair for long periods of time, and the claimant's own testimony is that while he could walk 200 feet on crutches on an ideal surface, he needed the ramps put in around his home for whenever the weather was bad and it was not practical to use his crutches. The referee's findings in this regard are supported by substantial evidence, and we will not disturb them. The only conclusion which may be drawn from these findings is that a wheelchair was in fact a necessity for the claimant, and, if a wheelchair is necessary, then it logically follows that minor modifications needed to facilitate the use of the appliance must also be considered a necessity.

The employer further argues that while the claimant's work injury necessitated hand controls in his automobile, these hand controls are not even arguably within the intent of the aforementioned section. It is this Court's opinion that the intent of the Act is not that a claimant be forced either to rely upon the charity of his family and friends or to rely upon hired assistance in order to perform those daily tasks, duties, and business that he was previously able to perform, when a simple, inexpensive remedy is available at hand. If the claimant's injuries make it impossible to leave his home, the remedial nature of the Act would be frustrated by a failure to provide a one-time expenditure. Therefore, we reverse the Board, and order that the claimant be reimbursed for his expenses.

ORDER

AND NOW, February 17, 1987, the order of the Workmen's Compensation Appeal Board, No. A-88637, dated July 9, 1985, is hereby reversed.