194 N.J. Super. 366 (1984)
476 A.2d 1265
EUGENE M. SQUEO, PETITIONER-RESPONDENT,
v.
COMFORT CONTROL CORP., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 7, 1984.
Decided June 28, 1984.
*368 Before Judges BISCHOFF, PETRELLA and BRODY.
Patrick J. McAuley argued the cause for appellant (Connell, Foley & Geiser, attorneys; George J. Kenny, of counsel; Patrick J. McAuley on the brief).
Eugene P. Squeo argued the cause for respondent (Schiller, Vyzas, McGill & Squeo, attorneys; Eugene P. Squeo on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
Petitioner was rendered a quadriplegic in 1978 by a work-connected accident. He was then 25 years old. His disability has been found to be total and permanent. The employer appeals from a post-judgment order directing it to pay for the construction of a self-contained studio apartment attached to the home of petitioner's parents.[1] The apartment will enable petitioner to leave a nursing home, a setting so oppressive to him that he has made three genuine attempts at suicide by ingesting an overdose of pills. The compensation judge found that the apartment was necessary to relieve petitioner from the double confinement of his disability and the nursing home with its deadening routine and elderly general population. Petitioner is intelligent and ambitious. He wants to be an active member of the community.
The primary issue raised by the employer on this appeal is whether the Division of Workers' Compensation is authorized *369 by the Workers' Compensation Act to enter such an order. N.J.S.A. 34:15-15 provides in relevant part:
The employer shall furnish to the injured worker such medical, surgical and other treatment ... as shall be necessary to cure and relieve the worker of the effects of the injury and to restore the functions of the injured member or organ where such restoration is possible....
The injury here goes beyond the paralysis of petitioner's limbs. The compensation judge found that petitioner suffers from a severe mental depression caused by the accident that can be relieved to a significant degree by releasing him from the confines of the nursing home to private living quarters, designed to accommodate his physical handicap, where he can reassert a measure of independence more precious to him than life itself.
Petitioner's examining doctor testified that given petitioner's aspirations for further education and a career as a financial analyst, forcing him to live in a structured institutional environment designed for people with no hope of a further active life "is no life at all and that he [would] rather be dead than to have to live a life like this." Two witnesses who are quadriplegics testified that despite their handicap they returned to the main stream of community life and have helped others do the same. In the special circumstances of this case where the worker's disability consists in part of a depression so severe as to bring him three times to the brink of suicide, "treatment" may consist of providing him with independent living quarters. The facts, thus found by the compensation judge, are supported in the record and may not be disturbed. Close v. Kordulak Bros., 44 N.J. 589, 599 (1965).
Respondent argues that the "treatment" contemplated by the statute is limited to "medical services" and "appliances," terms used in N.J.S.A. 34:15-15 to describe the kinds of expenses which may be allowed. Medical treatment is given to preserve life and relieve the patient as much as possible from pain and disability whether physical or mental. The Workers' Compensation Act has always been liberally construed "to alleviate *370 consequences of personal injuries caused by employment and to effect a measure of economic security for the workman so injured and to place the burden thereof on industry." Garguilo v. Garguilo, 13 N.J. 8, 13 (1953). See also Howard v. Harwood's Restaurant Co., 25 N.J. 72, 88 (1957). We do not suggest that employers must furnish injured workers whatever may bring material comfort to their lives. But where there is credible medical evidence that furnishing an injured worker his own living quarters is necessary to save his life, the definition of "treatment" is broad enough to encompass that relief.
The employer's medical witness did not deny that there is a medical basis for furnishing petitioner with independent living quarters separate from his parents but attached to their home. His objection rested purely on the cost:
THE JUDGE: Maybe the addition of the separate apartment is not that bad an idea?
THE WITNESS: If you have the money, nothing is a bad idea, Judge.
THE JUDGE: In other words 
THE WITNESS: It's the cost.
THE JUDGE: The only prohibition or the only  at this point in time there is some concern on your part as to the cost factor?
THE WITNESS: We try to be reasonable as far as cost.
THE JUDGE: I understand.
THE WITNESS: Medical need, we try very hard to be reasonable to both sides and we take what the average family does for the average quardiplegic and we try to counsel the family in this and this one fell a little bit out of the average parameter, that is all.
The judge found that there was no reasonable alternative to a separate apartment if petitioner is to live outside of an institution. Living in his parents' home would require that the house be structurally modified to accommodate his special needs. Moreover it would be contrary to petitioner's desperate need for independence to place him in continuous contact with his parents from whom he had been emancipated for years before the accident.
We are concerned that the cost of the apartment not go beyond providing for petitioner's basic need for independent living quarters. The compensation judge has the authority *371 under N.J.S.A. 34:15-15 to determine the necessity and reasonableness for any feature of the addition that may be in dispute between the parties. We are also concerned that if petitioner should no longer use the apartment, no one profit by any significant value it may have added to the property. We therefore direct that the employer be secured by a mortgage executed by the parents so that if petitioner should no longer use the apartment the employer may be compensated for any significant value the apartment may have added to the property in the event it is sold, rented or mortgaged. We were advised at oral argument that the parents would consent to such an order. Any dispute that may later arise regarding petitioner's continued use of the apartment or the amount of value added to the property when his use may cease, shall be resolved in the Division.
We affirm the judgment of the Division of Workers' Compensation as modified herein.
NOTES
[1] Petitioner was charged with the "care, maintenance, capital repairs, insurance, and any taxation which is to be associated with said construction."